IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 21-00876-EAG |
| TANYA MARIA BAEZ DONIS | Chapter 13 |
| DEBTOR/PLAINTIFF | ADVERSARY CASE NO, 22-0020 |
| VS | FILED & ENTERED ON OCT/27/2023 |
| DEPARTMENT OF TREASURY OF PUERTO RICO | |
| DEFENDANT | |

OPINION AND ORDER

Pending before the court is the motion for partial summary judgment by plaintiff Ms. Tanya Baez against defendant Department of Treasury of Puerto Rico for violation of the automatic and the opposition to it by Treasury. Treasury filed a separate motion for summary judgment to dismiss the complaint, and Ms. Baez opposed. For the reasons stated below, the court grants partial summary judgment in favor of Ms. Baez and denies Treasury's motion for summary judgment.

**I. Jurisdiction**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. Ms. Baez's Argument**

Ms. Baez filed a chapter 13 petition for relief on March 19, 2021. Treasury filed its first proof of claim in the case on April 23, 2021, and was being paid through a chapter 13 plan which was confirmed on August 20, 2021. On November 1, 2021, Treasury sent Ms. Baez a notice attempting to collect a pre-petition claim. Consequently, Ms. Baez alleges Treasury willfully violated the automatic stay.

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

Through the notice, Treasury sought payment of a debt in the amount of $266.00 related to Ms. Baez's tax return for year 2020. The tax return was filed pre-petition, on March 17, 2021, and accrued pre-petition. Also, the collection notice stated a specific amount to be paid and the consequences and penalties for the failure to pay as requested. The complaint alleges that, because Treasury had actual and constructive knowledge of the petition, the court must presume that Treasury's violation of the automatic stay was deliberate.

The complaint further alleges that Treasury's action caused Ms. Baez economic, physiological, and emotional damages. Ms. Baez states:

> [A]s a direct and proximate cause of Hacienda's violation of the Automatic Stay, the Plaintiff has suffered economic damages which include reduction in income from having to take time off work to address these matters; has incurred in additional expenses in having to travel back and forth the attorney[']s office, and has incurred in other costs as a result of related activities. Id.  Similarly, the physical damages suffered by Plaintiff, as a direct and proximate cause of Hacienda's violation of the Automatic Stay, include confusion, anxiety, nervousness, and embarrassment. … Finally, the emotional distress damages include severe tension, headaches, anxiety, severe emotional suffering, mental anguish, and other psychological injuries all caused by Defendant's deliberate disruption of Plaintiff's financial rehabilitation efforts.

(Adv. Dkt. No. 33, p. 12 ¶ 2).

## III. **Treasury's Position**

Treasury assets that it did not violate the automatic stay because it acted in accordance with the Bankruptcy Code and the Puerto Rico Internal Revenue Code. According to the Internal Revenue Unified System (SURI), the internal accounting software used by Treasury, no collection notice was sent to Ms. Baez. The document dated November 1, 2021, was sent to Ms. Baez by the Tax Return Processing Department, not the Collection Department of Treasury. It is just a notice to inform Ms. Baez that the extension of time for deferred payment she requested when filing her tax return for year 2020 would expire on November 17, 2021. Also, Treasury argues that the notice was assessing tax liability, which is allowed under section 362(b)(9)(D). Additionally, according to Treasury, Ms. Baez's property or bank accounts were not affected by a lien and no collection effort or notification was sent to her. Thus, Treasury says it did not make a willful or intentional collection effort.

Treasury further argues that the complaint fails to allege concrete harm to Ms. Baez and, thus, she does not have Article III standing to sue Treasury. "The Supreme Court of the United States has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a

statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right,'" says Treasury, quoting <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 341 (2021). Article III standing requires a concrete injury even in the context of a statutory violation. According to Treasury, Ms. Baez failed to demonstrate she suffered a concrete harm.

Treasury also argues that punitive damages cannot be imposed against the Commonwealth of Puerto Rico and its agencies. Treasury requests the dismissal of the complaint for failure to state a claim.

**IV. <u>Uncontested Facts</u>**

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

1. On March 17, 2021, Ms. Baez filed her income tax return for the year 2020. (Adv. Dkt. No.  20-3).

2. On March 19, 2021, Ms. Baez filed a chapter 13 bankruptcy petition, Case No. 21-00876.

3. Treasury filed its first proof of claim number 6 on April 23, 2021, which includes an original tax amount of $266.00, plus interest and surcharges, for a total of $315.05.

4. The "Notice of Chapter 13 Bankruptcy Case" (Official Form 309I) was sent electronically to Treasury by the Bankruptcy Noticing Center on March 22, 2021, at 10:33 p.m. (Bankr. Dkt. No. 10).

5. The "Notice of Chapter 13 Bankruptcy Case" included the following language:

   The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

(Bankr. Dkt. No. 10).

6. On August 20, 2021, the court confirmed Ms. Baez's chapter 13 plan, which provided treatment to Treasury's claim. (Bankr. Dkt. Nos. 69 and 74).

7. Treasury sent to Ms. Baez a "Payment Notice of Second Installment of Individual Income Tax Return" dated November 1, 2021, which reads as follows:

Dear Taxpayer:

The payment of the second installment of your Individual Income Tax Return for the amount of $266.00 is due on November 17, 2021.

**How and where can you make this payment?**
You can make your payment electronically through the SURI page (suri.hacienda.pr.gov). You will find the steps to follow to make the payment below:
If you have a SURI username and password:
1. Access SURI and enter your username and password.
2. Select the account **Individual – Income Tax Return**.
3. Select the period **31-Dec-2020**.
4. Select the payment method you will use and complete the information required. (Note: If you are going to pay with a credit card, you must select the option *Pay with credit card*).

If you do not have a SURI username and password:
1. Access SURI.
2. In the **Other Services** section, select **Payment Options** and then select the option *Other Payments*.
3. Select the method you will use to make the payment.
4. Complete the information required according to the payment method option you selected.

To ensure that your payment is applied correctly, it is important to do the following:
• If you are going to pay with a credit card, you must select the option *Pay with credit card.*
• In the line where you are asked to select the **Account Type**, select *Individual – Income Tax Return*.
• In the **Filing Frequency** line, select *Natural Year*.
• In the **Filing Period** line, select **Dec-31-2020**.

**What happens if I do not make the payment?**
If a payment is not received by November 17, 2021, said amount will begin accumulating interest at 10% calculated on the annual base and, also, it may be subject to a maximum surcharge of 10% if the delay exceeds 60 days. Therefore, we urge you to make the payment before the due date to prevent the accumulation of interest and surcharges and, for your case to be referred to any of our Collection Districts for due diligence.

**If you have already made the payment for this concept, please disregard this notice.**

We are here to serve you at the Treasury Department.

*Income Tax Return Processing Bureau.*

Period of Conservation: Six (6) years or an intervention of the Comptroller, whichever happens first.

(Translated notice at Adv. Dkt. No. 48-1).

**V. <u>Legal Analysis and Discussion</u>**

a. <u>Summary Judgment Standard</u>

The standard for summary judgment is well-known. Pursuant to Rule 56 made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. P.R. Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. <u>McCarthy v. Northwest Airlines</u>, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." <u>Id</u>. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. <u>Id</u>. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. <u>See</u> <u>Calero-Cerezo v. United States DOJ,</u> 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." <u>Greenburg v. P.R. Mar. Shipping Auth.</u>,

835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28,34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences. . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential fact finding, including the sifting of inferences." Id.

For the reasons set forth below, the court finds that that there is no genuine issue as to any material fact and that Ms. Baez is entitled to judgment as a matter of law.

b. Standing under Article III of the United States Constitution

Article III standing to bring an action consists, at a bare constitutional minimum, of the following three elements:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the

result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (cleaned up).

Ms. Baez alleges that, because of Treasury's violation of the automatic stay, she has suffered a reduction of income from having to take time off from work to address these matters; has incurred in travel expenses to and from her attorney's office; and has incurred in additional attorney expenses. Also, Ms. Baez alleges that, as a proximate cause of Treasury's violation of the automatic stay, she has suffered confusion, anxiety, nervousness, and embarrassment. She further alleges having experienced severe emotional suffering, mental anguish, and other psychological injuries. She claims physiological damages such as severe headache, chest pain, upset stomach and shortness of breath.

Treasury has presented no evidence whatsoever to disprove any of Ms. Baez's alleged injuries and failed to explain why these alleged injuries are not sufficiently concrete or particularized, why there is not a causal connection, and why it is not likely that these injuries would be redressed by a decision favorable to Ms. Baez. Thus, the court concludes that Ms. Baez has met the three basic elements of Article III standing.

c. Violation of the Automatic Stay

The automatic stay under section 362(a) is one of the basic protections afforded to a debtor under the Bankruptcy Code. Velazquez v. Quiñones (In re Quiñones), 2021 Bankr. LEXIS 768, *25 (Bankr. D. P.R. 2021). When a debtor files a bankruptcy petition, his or her property is immediately protected by an automatic stay that prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). And, property of the estate is broadly defined as encompassing any property to which the estate has some right. See 11 U.S.C. § 541. The automatic stay is extremely broad in scope and "applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Collier on Bankruptcy ¶ 362.03 (Richard Levin & Henry J. Sommer., 6th ed.). "[T]he automatic stay imposes on non-debtor parties an affirmative duty of compliance." Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). And, "courts must display a certain rigor in reacting to violations of the automatic stay." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975-76 (1st Cir. 1997).

Section 362(k) provides individuals with a means to redress violations of the stay, stating that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A willful violation does not require a specific intent to violate the automatic stay; rather, the debtor must show that the defendant intended the actions that constituted the violation and had knowledge of the stay. See Fleet Mortg. Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). A debtor alleging a violation of the automatic stay must demonstrate, by a preponderance of the evidence, "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damage as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012).

Here, the court finds that the notice sent to Ms. Baez is a collection notice. Treasury alleges that, because the department that originated the notice is not the collection department, the notice was not an attempt to collect a debt. However, the notice instructed Ms. Baez how and when to make payment. The notice also advised Ms. Baez of the consequences of not paying on time. Treasury had knowledge of the bankruptcy petition and the imposition of the automatic stay. Still, it failed to establish the necessary mechanisms to avoid collection efforts to Ms. Baez. Therefore, the court concludes that the notice sent by Treasury constitutes a demand for payment of a pre-petition debt and that Treasury deliberately violated the automatic stay.

d. Exceptions to the Automatic Stay under 11 U.S.C. § 362(b)(9)(D)

Section 362 states, in relevant part, that the filing of a petition does not operate as a stay under section 362(a) of

> the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

11 U.S.C. § 362(b)(9)(D).

Treasury argues that the notice sent to Ms. Baez was excepted from the automatic stay under section 362(b)(9)(D), which would permit Treasury to assess any tax, issue a notice, and demand payment of such an assessment. Again, this

is mere attorney argument, unsupported by any evidence in the record. In fact, Treasury's argument is contradicted by the case record. Both proof of claim 6-1 filed on April 23, 2021, and amended proof of claim 6-2 filed on May 10, 2022, state that the tax liability was still "pending to assessment". Therefore, the only evidence in the record shows that when the notice was sent on November 1, 2021, Ms. Baez's 2020 tax liability was still pending assessment and, consequently, the notice is not excepted by section 362(b)(9)(D).

**VI. <u>Conclusion</u>**

For the reasons stated above, the court finds that Treasury's collection notice was a post-petition attempt to collect a pre-petition debt in violation of the automatic stay under section 362(a). Also, Treasury's notice was not excepted from the automatic stay under section 362(b)(9)(D).

Therefore, the court grant's partial summary judgment in favor Ms. Baez finding that Treasury's "Payment Notice of Second Installment of Individual Income Tax Return" dated November 1, 2021, and sent to Ms. Baez violated section 362(a). (Adv. Dkt. No. 33). Consequently, the court denies Treasury's motion for summary judgment requesting dismissal of the complaint. (Adv. Dkt. No. 21).

An evidentiary hearing will be scheduled to ascertain and quantify Ms. Baez's damages resulting from the violation of the automatic stay by Treasury.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of October, 2023.

Edward A. Godoy
United States Bankruptcy Judge